C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MICHAEL NEWMARK,

                   Petitioner,

      - against –

WILLIAM KEYSER,

                   Respondent.
-------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

19-cv-3611 (BMC)

**COGAN**, District Judge.

      Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 from his conviction in New York State court for first degree robbery and tampering with physical evidence. The facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, petitioner lured a drug dealer, Daniel Vargas, with whom he was acquainted, to the apartment of petitioner's friend, William Patusak, under the pretext of wanting to buy drugs. Upon Vargas's arrival, either petitioner or Patusak or both beat and strangled Vargas to death, then robbed him of his drugs, cash, and a cell phone. Patusak cooperated with the prosecution pursuant to a plea agreement and the most salient issue at trial was whether petitioner or Patusak had killed Vargas. The jury acquitted petitioner of first degree murder, but convicted him of the robbery and tampering charges mentioned above.

      Petitioner raises five points of error: (1) the trial court improperly dismissed a juror during the trial when the juror did not show up; (2) a hearing court erroneously refused to suppress his confessions because his multiple *Miranda* waivers were involuntary and he was coerced into confessing; (3) a hearing court improperly found that petitioner had made an

insufficient showing to warrant a hearing as to the legality of his illegal arrest; (4) the trial court did not meaningfully respond to two notes from the jury during deliberations; and (5) ineffective assistance of trial counsel on several grounds.

As discussed below, each of these points is either not cognizable on habeas corpus review, without merit under the deferential standard of review in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, or procedurally barred. The petition is therefore denied.

**I.    Dismissal of Juror**

   **A.  Background**

On the third day of trial, one of the jurors failed to arrive at the 10:00 a.m. start time and had not called to report that he would be late. The trial court called him numerous times over the next several hours, and learned from the juror that the juror's mother had suffered a medical emergency and he was with her in a hospital. Each time the court spoke to the juror over this period, the juror agreed to call the court back at designated times and report on his status, but he never did, requiring more follow-up calls from the court. The court had urged the juror to advise whether he could get to court by 2 p.m. and to contact the court by that time if he could not be there, and the juror assured the court that he would do so.

At 2:14 p.m., not having heard further from the juror, the court again attempted to reach the juror, but could not make contact. The court announced that if it did not hear from the juror by 2:30 p.m., he would be replaced by an alternate juror. The court found that the juror was clearly preoccupied as he had not returned any of the court's calls, despite instructions to call at designated times. At 2:31 p.m., the court replaced the juror. At no time during the remainder of the trial that day did the juror contact the court.

On direct appeal, petitioner argued that since the trial court had "adjourned" trial from 10:00 a.m. until 2:00 p.m. based on the juror's absence, New York's "two hour rule" required the court to wait until at least 4:00 p.m. before replacing the juror. See N.Y. CRIM. PROC. LAW ("C.P.L.") § 270.35(2)(a) (McKinney 2018) (if a juror "fails to appear, or if the court determines that there is no reasonable likelihood such juror will be appearing, in court within two hours of the time set by the court for the trial to resume," then the court may replace the juror). Although petitioner cited to the Sixth Amendment and asserted that "[b]oth the federal and state constitutions guarantee a criminal defendant the right to a trial by jury in whose selection he has had a voice," he made no argument based on the Sixth Amendment or Supreme Court decisions applying it. Instead, petitioner's argument was entirely statutory, discussing state law decisions that had applied C.P.L. § 270.35.

The Appellate Division rejected plaintiff's statutory argument on the merits. It found that the trial court had "conducted a reasonably thorough inquiry into the sworn juror's unavailability and providently exercised its discretion in replacing the sworn juror with an alternate, after determining that the sworn juror would not appear within the two-hour time period set forth in CPL 270.35(2)." People v. Newmark, 155 A.D.3d 974, 975, 65 N.Y.S.3d 225, 227 (2nd Dep't 2017), leave to app. denied, 31 N.Y.3d 1016, 78 N.Y.S.3d 286 (2018). As to petitioner's reference to a constitutional claim in his brief, the Appellate Division held: "The defendant's claim regarding the constitutionality of the discharge of the juror is unpreserved for appellate review and, in any event, without merit." Id. (citations omitted).

### B. Analysis

Petitioner seeks to reprise this claim in his habeas corpus petition, but there are at least two reasons why it fails.

First, to the extent he is asking this Court to review the Appellate Division's disposition of his C.P.L. § 270.35 claim, that request is not within the scope of habeas corpus review. Habeas corpus is available only when the petitioner establishes that he is in custody in violation of the Constitution or laws or treaties of the United States. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Policano v. Herbert, 453 F.3d 79, 92 (2d Cir. 2006) (Raggi, J., dissenting) ("It is well established that a federal habeas court may not second-guess a state court's construction of its own law." (citing Estelle, 502 U.S. at 67-68)). Many cases have applied this principle to reject requests for review of C.P.L. § 270.35 rulings. See, e.g., Dejesus v. Superintendent of the Attica Corr. Facility, No. 17 Civ. 3932, 2018 WL 4043144, at *2 (S.D.N.Y. Aug. 7, 2018); Retallack v. Demarse, No. 15 Civ. 0135, 2015 WL 10682147, at *2 (S.D.N.Y. Jan. 8, 2015) ("An allegation of improper discharge of a juror is generally an issue of state law not cognizable on habeas review."); Jones v. Greiner, No. 01-CV-5276, 2003 WL 22284142, at *13 (E.D.N.Y. Aug. 18, 2003) ("The decision to replace two jurors who would have delayed the trial does not raise a federal constitutional claim."); see also Cabassa v. Filion, No. 03 Civ. 2920, 2004 WL 1367503, at *7-8 (S.D.N.Y. June 16, 2004) (dismissal of ill juror did not violate Sixth Amendment); Shepard v. Artuz, No. 99 Civ. 1912, 2000 WL 423519, at *5 (S.D.N.Y. Apr. 19, 2000) ("[S]ubstitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party." (quoting United States v. Millar, 79 F.3d 338, 342 (2d Cir. 1996))); McCrary v. Artuz, No. 95-CV-622, 1995 WL 728423, at *4 (E.D.N.Y. Nov. 28, 1995) (same as Cabassa).

Second, as to any Sixth Amendment claim, petitioner's failure to object to the discharge of the juror at trial on that ground, and the Appellate Division's holding that the claim was therefore unpreserved, procedurally bars this Court from reviewing the claim. A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007).

State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)). Moreover, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (noting that state courts "need not fear reaching the merits of a federal claim in an *alternative* holding" because "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law").

It is well settled that New York's contemporaneous objection rule, codified at C.P.L. § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review. See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011). New York's

5

contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." C.P.L. § 470.05(2).  This rule has been interpreted by the New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error."  People v. Luperon, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 739 (1995); see also People v. Hicks, 6 N.Y.3d 737, 810 N.Y.S.2d 396 (2005).  It is equally well settled under New York law that an objection on only state law grounds does not preserve a claim of any federal constitutional violation.  See generally Wright v. Duncan, 500 F. App'x 36, 38 (2d Cir. 2012) (evidentiary objections do not preserve due process claims); Davis v. Lee, No. 13-CV-3827, 2015 WL 1379024, at *4-5 (S.D.N.Y. March 25, 2015) ("[I]t is well-settled law in New York that the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation.").

      Here, plaintiff's counsel never objected to the dismissal of the juror on constitutional grounds.  At one point in the lengthy process leading to the dismissal of the juror, defense counsel requested that the court wait until the next day to see if the juror appeared.  But when the juror had again not called the court as he had represented he would do, the court replaced him. Petitioner's counsel made no objection to replacing him.  The Appellate Division's holding that the argument was unpreserved creates a procedural bar to reviewing that issue in this Court.

      However, a procedurally barred claim can be reviewed in this Court if the petitioner can demonstrate cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice.  See Coleman, 501 U.S. at

750; Harris, 489 U.S. at 262. The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986). The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by state officials' made compliance impracticable . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488) (alteration in original). Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, Murray, 477 U.S. at 488-89, the ineffective assistance claim must itself have been exhausted in the state court, Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

There is no cause or prejudice on this record, nor could there be. Petitioner never raised a claim for ineffective assistance of trial counsel for failing to preserve a constitutional challenge to the dismissal of the juror on direct appeal, and even if petitioner had raised the claim, the Appellate Division's alternative holding on the merits shows that such an argument would have failed as it did, in fact, fail. Because there is no exhausted claim of ineffective assistance, it cannot constitute cause for excusing the procedural bar.

Nor is there any miscarriage of justice resulting from this procedural bar. Petitioner has not even contended that the replacement juror was biased against him or that there was any defect in the jury's composition. In addition, the evidence against petitioner was overwhelming. Petitioner's claim is therefore procedurally barred.

## II.      Petitioner's Confessions

### A.  Background

Based on a statement they obtained from Patusak detailing his version of petitioner's role in the crime, two New York City detectives approached plaintiff at an upstate New York location when they learned through a source that he had a medical appointment there.  One of them, Det. Albert Lamoglia, was the only witness who testified at a pretrial suppression hearing.  Det. Lamoglia testified that the two detectives told petitioner they had some questions for him that they wanted to ask him in Brooklyn, to which petitioner responded "OK."  The detectives searched petitioner for weapons and took him back to their car without handcuffs.  During the two-hour drive to Brooklyn, the parties talked about innocuous subjects having nothing to do with crime, like sports.

Upon arrival at the Brooklyn precinct house, the detectives placed petitioner in an interview room, where he waited alone for about an hour.  They then came in and read him *Miranda* warnings from a paper, which petitioner acknowledged and waived both orally and in writing.  After the detectives showed him Patusak's written statement, petitioner confessed to planning and executing the crime, as well as its attempted concealment, although his statement placed responsibility for the murder on Patusak.  At the detectives' request, petitioner wrote and signed a statement that was largely consistent with his oral confession.  The detectives then asked petitioner to give a video statement to an Assistant District Attorney.  He was re-*Mirandized* on video, which the hearing court watched, and petitioner confirmed his earlier confessions.

The hearing court denied the motion to suppress, finding that "the record is clear the defendant was properly advised of his *Miranda* rights," understood those rights, and had

8

voluntarily waived them. It also found that "law enforcement's conduct was not coercive in any manner."

In a *pro se* brief on direct appeal, petitioner disagreed with the hearing court's factual findings and argued that on that basis, his confessions should have been suppressed. He pointed to one statement that Det. Lamoglia had made during his testimony, namely, that after petitioner had waived his *Miranda* rights, there was a period when petitioner "shut up and stood firm." From this, plus the fact that it took about five hours (closer to four, actually) between the time that the detectives picked him up in upstate New York and his first confession, petitioner argued that his confessions were involuntary because the time during which he "shut up and stood firm" was an "implicit" invocation of his right to remain silent. Petitioner also wrote in his brief that he had, in fact, expressly invoked his *Miranda* rights, even though there was no support for that in the record.

The Appellate Division rejected petitioner's claim, holding: "The court properly determined that the defendant was not subjected to interrogation before being advised of his Miranda rights, and that any statements uttered by the defendant after the administration of his Miranda rights were the product of a knowing, intelligent, and voluntary waiver." Newmark, 155 A.D.3d at 974, 65 N.Y.S.3d at 226 (citations omitted). It also held that petitioner's "contention that his statements should have been suppressed because he asserted his right to remain silent during questioning is unpreserved for appellate review and, in any event, without merit." Id. (citations omitted).

### B. Analysis

As shown above, the trial court had the benefit of seeing and hearing Det. Lamoglia testify, and of observing the detectives' and petitioner's demeanor during his videotaped

9

confession. The Appellate Division refused to second guess the trial court's determination of credibility. Here, my standard of review is even more restricted.

Under AEDPA, 28 U.S.C. § 2254(d)(2), in reviewing a state court conviction, the federal habeas corpus court can only grant relief from a factual determination if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1); see Burt v. Titlow, 571 U.S. 12, 15 (2013). A determination of fact is not unreasonable merely because it is incorrect – the standard is "substantially higher." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Wood v. Allen, 558 U.S. 290, 301 (2010) (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)). Rather, a petitioner must prove that the state court's finding was "objectively unreasonable." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Objective unreasonableness means that the state court's factual determination "cannot reasonably be reconciled" with the record that was before the state court. Jones v. Murphy, 694 F.3d 225, 235 (2d Cir. 2012).

Petitioner has not even approached this strict standard. His attacks on Det. Lamoglia's credibility are based almost entirely on his "shut up and stood firm" temporary characterization of petitioner's demeanor. But the record is clear that petitioner remained silent until he stopped being silent, and nothing the police officers did pressured or coerced him into talking other than showing him Patusak's statement, which they were perfectly entitled to do.

10

Indeed, petitioner conceded on appeal that under federal constitutional standards, invocation of the right to remain silent normally requires an affirmative statement of some sort, citing Salinas v. Texas, 570 U.S. 178 (2013), and Berghuis v. Thompkins, 560 U.S. 370 (2010), the latter of which is virtually on all fours with this case. Instead, petitioner argued that the New York Constitution is broader because "under our State Constitution the right to remain silent can be invoked simply by remaining silent." The Appellate Division disagreed with petitioner's argument of state law, but its holding on this issue is immaterial, because a violation of state law is not grounds for federal habeas corpus relief. See Grant v. Hoke, 921 F.2d 28, 32 (2d Cir. 1990).

Petitioner has failed to demonstrate any federal constitutional error in admitting his confessions into evidence at trial.

### III. Petitioner's Right to a Dunaway Hearing

Petitioner contended in his *pro se* brief to the Appellate Division that the hearing court had erroneously refused to conduct a so-called Dunaway hearing, which challenges the prosecution's right to use physical evidence obtained pursuant to an illegal arrest. See Dunaway v. New York, 442 U.S. 200, 219 (1979). The hearing court denied a Dunaway hearing based on the prosecution's representation that it had not seized any property from petitioner incident to his arrest that it intended to introduce into evidence at trial (and, indeed, no such evidence was introduced at trial). The gist of petitioner's argument was that the prosecution had argued that no hearing was necessary because petitioner had made an insufficient factual showing, but the hearing court had denied the motion on a different ground, i.e., as unnecessary. He sought a remand for a Dunaway hearing.

The Appellate Division affirmed on the basis that petitioner's boilerplate allegations in his counsel's affidavit were insufficient to warrant a hearing. Newmark, 155 A.D.3d at 975, 65 N.Y.S.3d at 226-27.

AEDPA permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 88 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal

12

habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting Burt, 571 U.S. at 19)).

Here, petitioner's argument to the Appellate Division was entirely based on state law. He did not argue that his arrest was illegal and that evidence should have been suppressed under any constitutional provision; he argued that he was entitled to a hearing under state law on that issue.[1] No federal constitutional right exists as to petitioner's right to a hearing. See Watkins v. Sowders, 449 U.S. 341, 349 (1981); Brown v. Harris, 666 F.2d 782, 785 (2d Cir. 1981).

## IV. Jury Notes

During deliberations, the jury sent out, among others, three notes. The first two sought a "copy of the law/definition of murder" in the first and second degree. The trial court advised the jury that it was not going to give it a copy of the statute but that it would reinstruct on murder if the jury sent out another note asking for that. The jury then sent a third note requesting reinstruction on the robbery counts. The trial court reinstructed on those counts. Petitioner's counsel did not object to the trial court's disposition of any of the notes. As noted above, petitioner was acquitted of the murder charge.

Nevertheless, petitioner, in his *pro se* brief, challenged the trial court's failure to give the jury copies of the statutes at issue. He argued that he had a right under New York law to have the court provide copies of the statutes to the jury,[2] and that although the court had reinstructed on the robbery counts, the trial court had discouraged the jury from requesting a copy of the robbery statutes by making it clear that it would not give the jury copies of the murder statutes.

---

[1] In any event, if petitioner had raised a Fourth Amendment claim, it would not be reviewable on federal habeas corpus under Stone v. Powell, 428 U.S. 465 (1976).

[2] "With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may . . . give to the jury copies of the text of any statute which, in its discretion, the court deems proper." C.P.L. § 310.30.

13

The Appellate Division rejected his argument on the ground that any challenge to the failure to give copies of the statutes was "unpreserved for appellate review." It further held in the alternative that, as to the murder statutes, the argument was "academic." And as to the robbery counts, it alternatively held that the challenge was "without merit." Newmark, 155 A.D.3d at 975, 65 N.Y.S.3d at 227.

Petitioner's reassertion of this claim in his habeas corpus petition is too insubstantial to require extended discussion. I will simply note, first, that it does raise any federal issue, as the mere recital of the phrase "fair trial" in the context of discussing a state statutory claim in state court is insufficient to have asserted a federal constitutional claim. See Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir. 1984). Petitioner's deficiency is that he has raised the claim here the same way that he raised it in state court, that is, as a challenge to the trial court's exercise of its discretion, without even a reference to any provision of the United States Constitution.

Second, if there was a federal constitutional claim, the Appellate Division's holding that it was unpreserved for appellate review erects a procedural bar prohibiting consideration of the claim under the authorities discussed above, and petitioner has shown neither cause to excuse the default nor manifest injustice arising from the procedural bar. See, e.g., Coleman, 501 U.S. at 729-30; Murden, 497 F.3d at 191-92. Finally, the claim has no merit under the AEDPA standard, as there is no Supreme Court authority even suggesting that a trial court must provide copies of operative statutes when requested by a jury. See generally 28 U.S.C. § 2254(d).

**V.  Ineffective Assistance**

Following commencement of this habeas corpus case, petitioner brought a collateral challenge to his conviction in state court under N.Y.C.P.L. § 440.10, seeking to vacate his conviction on the ground of ineffective assistance of trial counsel. He asserted that his trial

14

counsel committed seven omissions: (1) failure to argue that the police lacked probable cause to arrest him; (2) failure to properly cross-examine the arresting officer at the motion to suppress hearing discussed above; (3) failure to call petitioner and his father as witnesses to testify at a hearing regarding allegations of police brutality; (4) failure to argue that the petitioner was beaten and threatened by law enforcement on the way to Central Booking; (5) failure to move to reopen the suppression hearing; (6) failure to challenge the voluntariness of his confessions; and (7) failure to contest the robbery and evidence tampering charges.

The § 440 court held that all of these arguments were barred from collateral review under C.P.L. § 440.10(2)(c).[3] That statute provides that a claim of error that could have been but was not raised on direct appeal cannot be raised in a collateral proceeding.

Although federal courts have repeatedly held that C.P.L. § 440.10(2)(c) is a firmly established and regularly followed principle of New York law that creates a bar to habeas corpus review, see Murden, 497 F.3d at 196; Felder v. Goord, 564 F. Supp. 2d 201, 216 (S.D.N.Y. 2008), I am not inclined to invoke that procedural bar here. Petitioner's § 440 motion at least nominally relied on affidavits from himself and his father, which were not part of the record on direct appeal. An argument can be made that these affidavits were immaterial or too insubstantial to permit escape from C.P.L. § 440.10(2)(c), but in addition to these affidavits, the District Attorney submitted an affidavit from petitioner's former counsel refuting his allegations of ineffective assistance. The § 440 court thus had evidence before it that was outside of the record on direct appeal, and the invocation of C.P.L. § 440.10(2)(c) in this case may have been exorbitant. See generally Fulton v. Graham, 802 F.3d 257, 262-63 (2d Cir. 2015).

---

[3] The § 440 court mistakenly stated that C.P.L. § 440.20(2)(c) barred defendant's claims but clearly meant C.P.L. § 440.10(2)(c).

15

However, the § 440 court also held in the alternative that petitioner's claims of ineffective assistance were without merit. That alternative holding is entitled to deference under AEDPA pursuant to 28 U.S.C. § 2254(d). As noted above, I can only set aside the § 440 court's merits determination under that statute if I find that the § 440 court's decision was either contrary to or an unreasonable application of Supreme Court authority.

Petitioner's burden is amplified here because the standard for showing ineffective assistance of counsel is itself narrow. The relevant test is set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and citations omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. Moreover, as the Second Circuit has noted, "[t]he prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence." Garner v. Lee, 908 F.3d 845, 862 (2d Cir. 2018). Thus, the combination of AEDPA and Strickland makes habeas corpus review of the Appellate Division's decision "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

If there is a case where a "trebly deferential" standard of review might apply, it is this one, for, as shown in the affidavit of petitioner's former counsel submitted in the § 440 proceeding, counsel applied a strategy that was highly successful. Petitioner was facing a 25

16

years to life sentence had he been convicted on the murder count, and the only witness to the crime testified that it was petitioner who killed Vargas. This was against a backdrop of undisputed fact that it was petitioner who lured Vargas to the robbery scene and helped dispose of his body. But instead of facing 25 years to life, his counsel skillfully impeached Patusak and persuaded the jury that, at least, there was a reasonable doubt as to whether it was Patusak or petitioner who killed Vargas, and the jury did not even find accomplice liability for the murder. Petitioner therefore ended up with a sentencing range of 8 to 25 years, a substantially better result than he might have faced otherwise.

Despite this result, petitioner maintains that counsel made a number of errors that would have resulted in his total exoneration. The successful strategy that trial counsel employed does not preclude such a conclusion, but none of the multiple errors and omissions that petitioner alleges come anywhere near warranting it.

First, petitioner contends that he was beaten during his interrogation and counsel failed to argue that to the hearing court to show that his confessions were not voluntary. As part of that, petitioner argues that counsel should have sought to admit petitioner's CCRB complaint.[4] Counsel, however, offered two sound reasons why he did not pursue this defense of "involuntariness due to beating":

> [A]fter many hours of interrogation, defendant gave a nearly-hourlong videotaped statement in which he appeared calm and showed no signs of injury whatsoever. Defendant's statement also made out a defense to the felony-murder charge, and thus, eliminated the need for defendant to testify in order to present a defense. Thus, I advised defendant that his statement made out a defense to felony-murder and that it would be advisable for him not to testify at the hearing regarding his allegation of police brutality or his allegation – supposedly relayed to his father the morning after his arrest – that the police had told defendant that he would not be provided counsel or permitted to make a phone call until he gave a statement.

---

[4] The CCRB complaint was determined to be "unsubstantiated." The timetable of when that determination was made is not clear, but whether it occurred before or after the hearing, the CCRB was worth no more than petitioner's self-serving testimony.

17

Counsel also averred that he advised petitioner of this strategy and petitioner agreed.

In other words, first, counsel made a strategic determination that petitioner had a greater chance of prevailing based on the extensive length of his confinement during questioning than on a "beating" defense that was contradicted by the video record; and, second, even if the confessions came in, as the hearing court ruled, his fallback plan was that the confessions would effectively allow petitioner to submit evidence, without taking the stand, showing that it was Patusak, not petitioner, who killed Vargas – a strategy, again, that succeeded by petitioner's acquittal on the top count. This was important because if petitioner testified about the alleged beating, he would have been impeached with his numerous prior felony convictions. In short, counsel's decision reflected precisely the kind of strategic considerations that are within a trial counsel's discretion. See Strickland, 466 U.S. at 689.

Relatedly, petitioner contends that the prosecutor made an off-the-record comment to trial counsel that he would not use petitioner's confessions at trial, and as a result of that, trial counsel did not call petitioner or his father to testify about the alleged beating. For the same reason as noted above, this did not change and should not have changed counsel's strategy, i.e., counsel was entitled to determine that petitioner's claim of a beating would be incredible in light of his physical appearance and demeanor in the video confession, and the confessions could be used to defeat the murder charge.

Third, petitioner argues that his trial counsel should have argued to the jury that his confessions were involuntary. Again, that would have been flatly inconsistent with counsel's

18

strategic decision to use the confessions to show that petitioner, although confessing to lesser crimes, had steadfastly maintained that it was Patusak who murdered Vargas, not petitioner.[5]

Fourth, petitioner contends that his trial counsel failed to contest the voluntariness of his confessions. I assume by this that petitioner means that trial counsel didn't do enough, because the hearing record shows quite clearly that lack of voluntariness was a major focus of trial counsel's cross-examination and argument to the hearing court. But none of petitioner's efforts to second guess his counsel come anywhere near showing objective unreasonableness or prejudice. For example, petitioner contends that his counsel should have asked Det. Lamoglia on cross-examination at the hearing whether petitioner was "free to leave" the police precinct during his interrogation. Soliciting Det. Lamoglia's opinion, however, might well have resulted in an affirmative answer, which trial counsel could not have known. Instead, petitioner's trial counsel elicited all of the arguably coercive circumstances of petitioner's confinement, and then expressly argued to the hearing court the conclusion that petitioner was not "free to leave." This is the technique of a wise lawyer, not an ineffective one.

Fifth, petitioner argues that his trial counsel should have challenged petitioner's arrest as not supported by probable cause. In fact, his counsel did just that, requesting an evidentiary hearing on the arrest, but the hearing court declined. The reason was that the police had Patusak's statement that petitioner participated in the robbery and killed Vargas. That was more than sufficient probable cause for petitioner's arrest. Similarly, petitioner contends that his trial counsel should have pursued the identity of the "confidential informant" with whom Det. Lamoglia testified he conferred to show potential unreliability. However, in light of Patusak's statement, that additional information was entirely immaterial.

---

[5] The same is true for petitioner's contention in his § 440 motion that counsel should have included a jury charge on the issue of voluntariness of a confession.

19

Whether I review the § 440 court's ruling on the merits or under the deferential AEDPA standard, petitioner has not demonstrated a single act or omission that was objectively unreasonable or prejudicial to his case under Strickland.

## CONCLUSION

The petition is denied, and the case is dismissed. The Clerk is directed to enter judgment against petitioner. A certificate of appealability shall not issue as the petition presents no substantial constitutional issue. See 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S.D.J.

Dated: Brooklyn, New York
　　　　August 12, 2020